Mr. Edelman, Mr. Metzler, for Pallant and Amicus. 1-3-2-5-2-3, Esther Buchanan on behalf of Plaintiff and the class defined herein, Federal Trade Commission v. Northland Group, Inc. Arguments not to exceed 10 minutes for Plaintiff, 5 minutes for Amicus, 15 minutes for Defendant. Mr. Edelman, Mr. Metzler for Pallant and Amicus. Good afternoon. Good afternoon, Your Honors. May it please the Court, Counsel. The Federal Trade Commission and the Consumer Financial Protection Bureau state that the complaint in this matter states a claim because the letter at issue can mislead the unsophisticated consumer. The Seventh Circuit agreed and upheld an identical complaint based on essentially identical letters in the McMahon and Delgado cases. The key features of the letters are that they offer a settlement of a time-barred debt, do not disclose that the debt is time-barred, and contain jargon associated with legally enforceable rights. Settlement, satisfied, settlement letter. They also use language which conveys the impression that the consumer will be better off entering into a settlement than not, such as reduce your balance, not obligated to renew. In fact, the only... Is that language required, not obligated to renew? Wasn't that required language? It is language that came from a case addressing the issue of whether the collector was being misleading and not disclosing the end date. That does not, of course, suggest that debt collectors cannot mislead in other respects. The agencies which... Counsel, I have a question. So this is before us on a motion to dismiss. That is correct, Your Honor. All right, and let's... Is there any discovery you're hoping to get out of this, or is your take on it that, you know, basically with the letter, you get in front of a jury or you have a tribal issue of fact that you get a trial over? Is that your basic position, or do you have the view, no, we actually think discovery would be important because we want to pursue X, Y, and Z? In the Seventh Circuit cases, discovery has been pursued. In this case, we offered... Just tell me what you want to do. What do you want to do in this case? What are going to be... If you win at this stage, what would be your request for discovery, and how would that be helpful to the resolution of this case? Pertinent things in discovery would include what happened in those jurisdictions which required the disclosures, and LVNV is now complying with the Asset Decree and making the requisite disclosures. What happened? How much less did they collect on time-barred debts? I mean, why is that relevant? What's that relevant to you? That's like an empirical study. It demonstrates that the information withheld is material and that the likely reason for withholding... But it suggests we should, what, wait a year or two and see what happens in the Seventh Circuit once people start writing levers with caveats? I mean, it seems entirely speculative what it even means. I mean, if it shows that they collect a lot less, I don't understand what you're demonstrating. We offered the deposition of the gentleman that conducted the survey for the Attorney General of New Mexico, who came to the conclusion that this is material and that these disclosures are important to consumers. I think that discovery from the defense... We offered to take the deposition of this person. The district court said, no, you're not entitled to it. What happened, in fact... So this is an expert on what's misleading to consumers. Who conducted a survey, as the Seventh Circuit counsels ought to, should be done in cases like this, relating to the impact of this information. So the answer to the question, what would come of discovery, as you're saying, it would give you an opportunity to maybe get experts who have looked into this to figure out whether it's misleading to a reasonable consumer or not. And I take it the implication is the other side would be able to do the same. And at that point, would it be teed up for the trial? Is that really all that needs to be done? That is correct, Your Honor. Now, in Margalefsky, this court said that in the case of languages of this sort, it's appropriate to simply show the letter to the trier of fact and let them decide whether it's confusing. So you could get different answers with the same letter? You could get different answers from different juries? That's always a possibility with a jury. There's an area in which they can decide either negligence or not negligence. But if properly instructed as to a fraction of the population that would interpret... I think I know where you're going, which is, well, I think most juries would say it's deceptive. But if there is, in fact, a genuine issue as to deception, it does follow, doesn't it, that you could very well get different answers from different juries about the exact same letter? It is possible, and I think that was anticipated in Margalefsky, which remanded the purpose. It's odd that, you know, in one case it's deceptive, and in another case the same form letter is perfectly fine. It's inherent in the jury system, but... Tell us this. Is there... So, I mean, it's inherent in the jury system in the sense that you could have a Toyota engine in a negligence claim, or smoking is a great example. I mean, the state of Florida is having one smoking case after another with very similarly situated plaintiffs with opposite verdicts. So I get the inherent point with negligence and juries, but do you have examples with this statute in comparable letters where people have all said, yeah, that's fine, you can put the same letter in front of triers of fact and there's just nothing wrong with different outcomes? That's what the statute contemplates with a word like misleading. That is, I think, contemplated by this Court's decision in Margalefsky. Does it happen? I mean, you seem like an expert in this area. Can you think of areas where... It generally does not, and I think one of the reasons it doesn't happen is that some deference has to be given to the position of the agencies. They do have the expertise and the authority under Colgate-Pomalev to define what deceptive means. You want a jury trial. You don't want it to go to the agency. Well, that's correct, but I think the instructions have to reflect the agency position, and in a suitable case, we may be entitled to judgment as a matter of law. The one thing that I don't think... Judge Rosenthal's got a question. That's my question. I mean, the Seventh Circuit approaches this as a fact question. That is correct. Is that true in every circuit? This Court went in some ways in that direction in Margalefsky. Most other circuits treat it as the judge should place themselves in the position of the unsophisticated consumer, look at the letter. You still may have to consider evidence. I think the agency position is relevant. I think that if somebody offers evidence of actual deception, that would be relevant. Well, I guess my question is in the Sixth Circuit, assuming we can figure out the level of deference that is appropriate, is the issue of whether, given the language of the statute, it is deceptive to include in a letter seeking to collect a time-barred debt the word settlement, which is clearly an issue here. Is that a question of law, or is that a question of fact in the Sixth Circuit? We know what the Seventh Circuit answer is, and McMahon flows in part from that answer. What is it in this circuit? Margalefsky indicates that it is a question of fact, although it doesn't go so far as the Seventh Circuit has in some cases in terms of requiring evidence. I certainly don't think it's appropriate, as happened in this case, to simply dismiss a case and refuse to present evidence on the theory that, basically, unless there's a threat, there's nothing actionable which has occurred. We simply do not believe that that's an appropriate statement of the law, particularly when another court of appeals and two agencies have indicated that we consider this type of language to be a problem. And we have two courts of appeals that say the contrary, in the Third and the Eighth? I disagree. In both of those cases, and we've pulled the letters, there was no attempt, there was no offer of settlement or anything else that was alleged to be misleading. The claim was simply you cannot make any attempt whatsoever to collect a time-barred debt. I simply don't think we're awfully close to that de facto, but you have answered my question. I know – I think the government is here to speak as well. And you can talk about that in rebuttal. One more question before rebuttal. I'm curious if you would concede – tell us what language would solve this problem. Because one argument on the other side is, oh, boy, we're going to have to research every debt. We have to figure out what the statute of limitations in this state is. Maybe there's a conflict of law issue and so forth. I mean I'm sure you're going to say that, yes, there is language that would solve this problem in all cases. I want to hear what it is. The language that the FTC prescribed in the asset decree would solve the problem. Say it. Just say it to me or paraphrase it. Because of the age of this debt, either we cannot or may not be able to sue you for it. There's a second sentence. Can it be shorter than that? That this may not – the letter by no means needs to communicate the legal obligation or the enforceability of this particular debt. The legal enforceability of this particular debt. Would that do? I would prefer the asset formulation, which says age of debt and we may not be able to sue you. Okay, but answer the question. Would it do to use the phrase this does not mean to communicate about the legal enforceability of this debt? I'm not sure that would dispel the confusion. Okay. Thank you. Thank you, Your Honor. All right. We'll hear from the – well, I think the government's next, yeah. You're like all Applees. You're ready to go.  I know exactly how it feels. Good afternoon. May it please the Court, Jack Metzler. I represent the Federal Trade Commission. I'd just like to pick off where a few of the questions that – where the previous argument left off. Judge Rosenthal, with regard to the language that is required by the Sixth Circuit or is at least offered as a – you know, as a – protect against a misrepresentation, that language came up in a case where the allegation was that it was deceptive to offer a settlement because the debt collector or the debtor might think that this is the only last chance to have a settlement when, in fact, most of these collectors do offer settlements multiple times. Nevertheless, the language can give the impression that, you know, if we're not obligated to renew, well, then something else might happen. In a non-time-barred debt, that might be okay because they could sue. But in a time-barred situation, they really can't sue without violating the act, and so that impression has a problem. Would they sue if they didn't include that language? I'm sorry, I didn't hear the question. Would the collector be sued if they didn't include that language? Well, in the Seventh Circuit, they certainly think that that dispels that misimpression. You know, I don't have an opinion on whether that's so or not. It seems very odd that this would be a question of fact. For some of the reasons that we discussed with Mr. Edelman, I mean, it's an objective standard. You know, it's not whether the plaintiff, in this case, Ms. Buchanan, had reason, you know, was confused. It's whether the least sophisticated debtor would be confused. Why shouldn't that be determined objectively by the court as a matter of law rather than as a matter of fact? I don't think there's any particular reason it shouldn't be determined by a court as a matter of law. As a question of law is a more precise way. Sure. Do you think it is a question of law? Well, I think in some cases it certainly could be. In this case, for example, it's certainly at the plausibility level where we are on a motion to dismiss. But plausibility has nothing to do with it if it's a question of law. That's why we're so focused on this question, right? I mean, if it's motion to dismiss plausibility and it's a question of fact, it's pretty easy. We let the case move on. But if it's a question of law, what does plausibility have to do with it? The question is whether a reasonable person would think of it this way. And that's the end of the story, if not. Well, of course, it's the least sophisticated person, which is less than the reasonable person. But I certainly think the court can. . . Would you say yes or no, question of law? I think it can be. This court has gone the other way in a couple of cases. But I think that in the standards that it has articulated in the Gurdon cases one and the Kistner cases another, in which the court has said if the language is reasonably susceptible of more than one interpretation and one of those interpretations is false, then what the court did in those cases was send it back for a jury trial. I'm not so sure that's necessary. I think you could say that if it's reasonably susceptible of more than one interpretation and one of them is false, then the court can find as a matter of law that the letter is deceptive. So I don't think there's any particular reason. It has to be a facts standard. Of course, it's up to this court to decide, and it would be a little different from what it has done in other cases. Can I ask you a question on a different subject? Sure. Where is the agency in its own consideration of whether a rule ought to address this issue? Well, the Federal Trade Commission does not have rulemaking authority under the Fair Debt Collection Practices Act. The CF, the Consumer Financial Protection Board does, and they have issued a notice of, not a notice of proposed rulemaking, but a pre-notice notice saying this is what we're considering doing. So you've got a ways to go. Yes, they have a ways to go. We don't have any ways to go. They, you, okay, government. So yes, at some point there could be a rule that would prohibit this particular practice, but as you say, that could well be a ways down the line. How does the preliminary status of the movement towards something that might someday be a rule affect the level of deference that you think should be given? In this case, I think that to the extent that the court finds the views of the agencies persuasive and adopts them, that's the level of deference I think is appropriate, and you can call that Strickland or something else, or you can just say we agree with what the Federal Trade Commission and the Bureau have to say. If there are no further questions. Oh, no, there are plenty of questions. So I'm just trying to figure this. I'm just trying to figure out how you're thinking about this, and I hadn't thought about one. I've just been thinking about your last answer to me, and it dawned on me that, well, maybe the agency is thinking, well, no, we're actually really comfortable with judges deciding this because we think they can get it right, and we think they'll find an awful lot of these things misleading, and we're comfortable with that. Is that a correct implication in what you were saying? Because I was thinking the way this looked was, and I did find Judge Wood's opinion pretty persuasive, I will say, and I had the same problem Judge Ketledge did. Well, this is weird. It's now going to have the same letter, different outcomes, and I thought, hey, fine. The word is misleading. It's not implausible. That's a fact question, and yes, it may not have a lot of evidence, but the whole point is to enforce it with juries, and there is some sense to the idea that jurors are going to be far better at assessing whether a letter is misleading or not than judges who are already lawyers, which messes them up a little bit and may be a little bit more skeptical about something misleading and may be going to focus on, well, wait, there's a moral responsibility for the debt. This is perfectly accurate. So I still am struggling with where you, I don't know if it's the government's position or your position. I don't care how you frame it. I'd just like some advice. Well, so in my mind, because this is not something I've cleared to the commission or anything, but I think that I would be fine with a standard that permits judges to make this decision, subject, of course, to I guess it would be an abuse of discretion standard where And you think it's not crazy to do it at the motion-to-dismiss stage? Well, I think that, again, subject to the standard of review, I think in some cases there can be, and the standard that has been articulated by this court and others for what a least sophisticated consumer might think works pretty well. It's very low. It's a bizarre interpretation, an irrational one, an idiosyncratic, something only that that one plaintiff believes. I think judges are capable of making, in the same way that they can decide whether a claim is plausible under Twombly and Iqbal, none of these are perfect. How about with this case? So let's just say, fine, it can be something that judges can handle perfectly well. Do you think this case and cases like it are ones where the motion-to-dismiss is a pretty risky stage? In other words, let them make that decision, but have them make it after there's been a shot at discovery, which so far sounds mainly like finding out if there's any useful studies or perhaps conducting a study, presumably competing ones, one on each side. Where does that fit into how you think this should be handled, including in this very case? But I'll take either answer. Well, in general, I think that the standard would have to, at the motion-to-dismiss stage, you would be at an Iqbal standard. So if it were plausible, that defendant could prove a set of facts. Now that means just using logic and even dictionary. Plausible to defendant? You mean plausible to plaintiff? Yes. Okay, yeah. Keep going. The court could use lots of tools, some of which would be subject to discovery and some of which are sort of the ordinary arguments. What is there besides studies in this area with a letter like this? There really isn't anything else, is there? You could do a consumer survey. You could, I mean, for instance, in this case. Basically empirical research. Sure. You know, in this case, the parties argue about the use of the word settlement. And so you could do a survey of popular culture. How is it used in television and movies when people talk about settlements? I've seen attorney commercials where they say, you know, the Brown firm. And there's a dramatization of the defendant who says, oh, they have the Brown firm. We better settle. So that might be relevant to what the least sophisticated consumer or how they would understand what it means to be offered a settlement. So I think there are lots of tools, and many of them, like dictionary definitions, for example, would be the kind of argument you could make in a motion to dismiss. On the other hand, there are other types of evidence which could show how a reasonable or least sophisticated consumer might interpret the letter that are not that kind, that might require evidence. Right. And thinking that you think probably the ideal way to do this is at summary judgment. And they seem to rarely go to jury trials. I think in most cases summary judgment would be sufficient, yeah. Or a bench trial. Or a bench trial, yes. Now, I do, if I may, have just a little bit of context that might be helpful to the court. The Federal Trade Commission has studied the debt collection industry for a long time. And some facts might be helpful to understanding how the debt collectors understand these or obtain and pursue these debts I think would be helpful. One thing that I think is relevant is that most debt that is collected by professional collectors is purchased from either from original creditors or other debt collectors. Most of that, about 90 percent, comes from credit cards. So the fact that for collectors, they don't really have that many different statutes of limitations to research in order to understand this issue. The second point is that most, the price that collectors pay for these debts is based largely on how old they are. The older a debt is, the less they will pay for it. And so they know full well how old the debt is when they get it. So the burden in determining the statute of limitations is not actually all that great. And if there are no further questions. All right. Thank you very much. We appreciate your amicus brief and your argument today. Thank you. Mr. Schultz. May it please the court and counselors. My name is David Schultz, and I represent the Appalachian Northland Group, Inc. I want to make sure I focus on the issues that are presented here. And one of the major issues they present in their brief, as a matter of fact, the majority of the Appalachian's brief, is that there's somehow a mandatory disclosure requirement when debts are out of stat, and that disclosure requirement must be placed in communications to consumers. I've not heard. I have a question about an issue that hasn't really been raised yet. And that is the question is the argument that in the absence of the kind of disclosure about the time-barred nature of the debt, that you're not informing a least sophisticated consumer of the risk that that payment of a part will reopen the entire and reactivate, start running anew, the statute of limitations. Your response, as I read your brief, seemed to be, well, wait. This is a settlement. If they pay the settlement, that won't happen. But what if a consumer getting this letter says, not unreasonably, you know, I just can't afford to pay the whole thing, but for whatever reason I intend to begin to pay, here's a partial payment of your proposed settlement. At that point, does the statute of limitations begin to run anew, and is that a risk that a consumer needs to be warned against in order to make the communication not deceptive? It's pretty far removed from the letter I'd issue here, but I understand the concept. It's the same letter. Same letter. Call it a hypothetical, but just answer and then qualify. Sure, sure. I believe under the law in some places that a partial payment could begin the statute again. But I also know from representing the industry for 20 years, what they are trying to do is engage in conversations with consumers. And the reason they're trying to engage in conversations is to try to resolve the matter fully, not payment in full, but resolve the matter. And so they engage in these conversations to seek some payment, and they determine whether person O's can pay X, and if they can pay X, they'll take that to resolve it, or they may take payment plans. The idea is not to trick somebody into a partial payment and therefore then run the limitations period out so you can sue them, and now you've created a portfolio for which you can do that. That's not the way it's done. As a matter of fact, most agencies, and I don't have empirical data on this, but there are thousands of agencies, and many, many, many of those agencies don't have as part of their business model some kind of litigation procedure. So your answer appears to be there is a risk that it could occur, but in real life it's just not worth worrying about. We don't operate that way. I don't see a lot of lawsuits over that. The Appalachian Council files thousands of these. I've defended hundreds and hundreds of them, maybe thousands, too. I don't see it as a major issue. And it's a matter that I suppose would have to be addressed in disclosure, which is kind of what I was talking about. There is no mandatory disclosure under the Fair Debt Act, as they speak about. They were asked. They made an argument. Yeah, but I mean you would agree if it's entering misleading territory, the way to solve the problem is caveats. I mean, that just fits. That's true. And what I'm saying is part of their argument is there's a mandatory disclosure. The government has said there is not a mandatory disclosure requirement. So I think where we're actually at and where we seem to be in agreement is whether or not the language here somehow deceives. And they've actually brought an E, which is an E claim, which is a false, misleading, deceptive. And they've brought an F claim, which is unfair or unconscionable based on the same language in this letter. The government, on page 9, footnote 3. Don't you think the lowest hurdle is misleading? I think so. I mean, I think that's where we're focused. Because if you solve that problem, you solve everything else. But if you don't solve that, you have a problem. Exactly. So, you know, if you're looking at this letter, there does not seem to be a dispute as to the – obviously the last paragraph, that's the mandatory disclosure that the government tells you to put in the Fair Debt Act. It's all settle and settlement offer. I don't understand why that's – It's just that one sentence. I mean, I totally get the point that because a debt's not legally enforceable doesn't mean you can't try to collect it or inform – I mean, I completely get that point, agree with it 100 percent. Right. But what I'm just struggling with is what the word misleading means in the context of this letter. And then who has – who's really supposed to be deciding that? And then I've got this layer of complication that it's a motion to dismiss, which is a wonderful decision avoidance tool for court of appeals judges. So I'm sure you don't want me to invoke that, but I'm just telling you where I am. Well, every place but the Seventh Circuit – every place but the Seventh Circuit decides these as – with the standard, and it's basically the same standard, either unsophisticated or least sophisticated, and it really comes down to the same. And usually – They never go to juries? Usually it's based on a letter, which is not – But just – either you win as a matter of law or you lose as a matter of law. These cases – you've been doing – Most of the country, that's how it's decided. There are instances, I believe, pretty rare, and I can't think of many, in all these years where the judge has said, let it go to a jury. I have, in the Seventh Circuit, tried some to the finder of fact, and that happens. But that is a unique circumstance in the Seventh Circuit. Nobody else is treating it as a pure question of fact. The way Judge Neffi – But what about Mark Galefsky, our case? You're right. Okay, so we call it a finding of fact, don't we? Most of the time you have it in the Wallace case. You didn't, for instance, less than a year ago. Am I getting it right? Mark Margilefsky, Mark Galefsky – There was – there has been a case where the court reversed on a 12B6 and said it was plausible on a letter. Is that that Gurdon case? Yeah. But more often than not, as a matter of fact, overwhelmingly more often than not, this court, each one of you on the panel has done it, applied the standard to the uncontested issue before it, which was the letter, and decided the matter. And so the government's – How about the role of studies? So motion to dismiss versus summary judgment. I'm sure you have studies that are helpful, but I don't know. How do you think about that? Well, I would tell you that I believe in the Seventh Circuit. We're the only place where they've done it. Nobody else has done it that I'm aware of. I think the plaintiff's bar probably regrets the development of that law, and I've had those experts barred under Daubert probably every time so far. It's not an easy thing. And what you find yourself in is years of litigation, perhaps battling experts not necessarily needed. That's the plaintiff's burden is to come forth with a survey of some sort, and they try different things. I don't think that's a very workable system. I think the rest of the country system works much better. I'm fine in both. But you've created a system, and Judge Neff applied it, and I believe applied it correctly without a lot of countries. I don't see how the term settlement. This is a good thing. It's a good thing. And when you look at most of the definitions of settlement, you're talking about resolving something, paying something to finish it. And even in the McMahon circumstance, and they talked about the Wikipedia search, and so what they said had come to a plausible, under a question-of-facts standard, is they said, well, I guess it's possible that a consumer could get the letter, look at the words, go to a computer if they had a computer, type in Google, that's the choice they chose to make, look at all the stuff that Google pops up, go to the Wikipedia definition, and then look at that part of the Wikipedia definition that talked about resolving something which is an agreement to end the lawsuit before a judgment is rendered. That's a different circumstance. I know that, well, I don't know, but I'm pretty darn sure Ms. Buchanan and others. You just said something. I'm just hoping maybe this helps me frame it. You think it's fair to think about this case, even if it's something that's a question of law or that, put it better, judges usually decide it's a matter of law, but you still think it would be fair to say, question one is whether it's plausible as a matter of law to find this would have been misleading to the least sophisticated consumer, possibility number one. Possibility number two, it's summary judgment. As a matter of law, we do not think the least sophisticated consumer would have found this misleading. Don't you agree with me that the first one is a little harder for your side to meet? The chances are almost always the evidence is going to be the same. Even if you had a jury trial, they're going to be getting, as a jury instruction, they're going to get your standard. And then as the evidence upon which to test it, they're going to get the letter. It's the same thing. If it's not going to be resolved on Rule 12 motion, it's going to be resolved by the judge on Rule 56 motion, more likely than not. I'm just suggesting that maybe that's better, and I don't understand why that hurts you. It only hurts you if there's a ton of discovery. I must have misunderstood it. I am saying this is better the way Judge Neff did it. I mean, do you think there's any value to discovery about this, given that we have the letter? Is there anything else? I mean, I know you refer to the surveys. I totally get your point there. Anything else that needs to be—anybody need to be deposed about this or production of documents or anything? That's kind of the interesting thing. So even in the Seventh Circuit, there's a case called Turner. It went kind of back and forth, and I tried the thing, and the plaintiff got up there and testified. But even then, Judge Denlow, in his opinion, who was a magistrate judge, was the finder of fact in that case. He said it was irrelevant. He's still going to just judge the letter. He might have had an MBA from Harvard, you know. Yeah, it's not reflective of anything. So I could go on about Professor Goldsmith, but he—Apollon's counsel, I think, made a mistake by saying he conducted a survey. He never conducted a survey. He admits he didn't conduct a survey. He doesn't know how to do surveys. The bottom line is that there is no reason to amplify the basis for the judge to decide whether this is an objectively deceptive letter or not beyond what's stated in the pleadings. I think that's very well stated. I wish I would have said it in response to the first question. That's right. Why would you want to be changing what's already a fairly workable system and it's manageable? If you're going to say, well, let's say, question the fact that this threatens litigation or settlement. You know what's also commonly said in letters, for instance? If this is unpaid, we'll pursue further collection activity. If the stat remains unpaid, we'll pursue further collection activity. You see that in letters a lot of times. Oh, my gosh, well, they said further collection. Boy, that could be a threat to litigation. Let's talk about that. If you start saying these are questions of fact or the client is going to consider what other options are available to it, that's a threat to litigation, too. You're going to create this system where the judges aren't going to be deciding. If you determine that this is one that should go somehow to a finder of fact as opposed to being decided on a letter. And that's why I also think that I understand the government's position up here in part. I understand in Buchanan, in Delgado, McMahon, where the Seventh Circuit asked them to file a brief because the appellant was taking the position of deference. And then they filed a brief that said, don't, there's no deference. I'm not sure I understand here, because basically all they've said is there's no deference. They've applied the standard that Judge Neff applied, basically, and then said we're not taking a position on whether it's a violation or not. They're not experts on interpreting the word settlement. I don't think they're adding a whole lot with their position here. Judge Neff and judges know the standard and apply standards to uncontested facts all the time. You can say, I hear everything you're saying. I don't disagree with a single thing you said. I still have this troubling problem. Maybe it's nothing more than an intuition that the word misleading implicates a fact. That sounds like a point of fact. And the question of whether the word settle or settlement contemplates, I mean, the normal definition of settlement is to settle litigation. I mean that is the normal way in which it's used, to settle litigation. Litigation suggests legally enforceable. So that's, it doesn't get any more complicated or easy for me. I can't seem to get over this problem that it sounds like something that would be a fact question. And in calling it least sophisticated consumer, I'm not sure that. Or sticking the word objective in. Yeah, I mean I don't understand why that isn't amenable to jurors. Now, it sounds to me like what you're saying. This creates some real problems throughout the country outside the Seventh Circuit. And if that's true, I'm all ears and I want to start reading these cases to see what's going on. What are they doing? But that's the thing I'm really struggling with. First of all, the standard isn't just misleading, by the way. There is a materiality aspect that's materially misleading. It's generally been considered part in the Sixth Circuit. The key word is settlement and settlement offer. And the question is whether that's misleading that it's a legally enforceable debt. That's to me the whole point. Can I ask a question that's a little bit off what we've been talking about but may bear on it? And that goes back to your point about what's really going on out there. So a consumer reading this letter, is there any bad thing that is going to happen to that consumer if they don't pay? Or any good thing other than the sense of moral virtue if they do pay? Yeah, I'm glad you asked that. Well, obviously one good thing is this is done. And it's done at one-third of the value of the debt. But what's the value of done? Well, for instance, just because it's out of statute, and the statute could be two years, three years, four years, five years, it happens to be six years, doesn't mean it's off the person's credit report. And if this was, in this instance, a six-year debt, it would be on the credit report for the end of the year. So that's of significant value. Plus, as the ACA points out in the amicus brief on pages 15 and 16, there are other moral – paying the debt because it's a moral obligation is not a bad thing. But there's other reasons. If you want to be a co-obligor, if you want to get credit from that person again, if you're applying for employment or a license or something else, they may ask you about these kinds of financial histories. So it has relevance to that. Would a least sophisticated consumer understand that if they paid this debt, it would come off their credit report and that would inure to their benefit? Or is that something that raises the question of, is this a lurking fact question? All right. So the next theory, a year from now, it could be here. Well, they should have told them that it was beyond the credit reporting period. This is not a full-disclosure statute, all right? This is a statute of prohibition. Don't harass. Don't call after certain hours. This is not like TILA. And the government hasn't said it's a mandatory disclosure requirement. And you could start going pretty far. For instance, how about this? You know what? Before you pay, you should consult a debt counselor because it may not be in your interest to pay. Perhaps we should put that on the letters. Or, no, before you pay, you should consider bankruptcy as a reasonable option because that may be in your best interest to do so. I'm not opposed to that. But what I am opposed to is somehow being sued for not having said that. And that's not in the Act. Let me ask you a question. You know, obviously you've done a ton of these cases. Is there any place in this least sophisticated debtor analysis for saying that, you know, which is what I think we were talking about in Gurdon, to, you know, do a little research? For example, you know, if the debt is 10 years old and they're getting confused about the implications of the word settle, maybe they need to find out whether it's still enforceable in court. I mean, is that something that the case law reflects at all, or is that just not really present? Well, the standard requires that the consumer will consider carefully the contents of a communication, so that is somewhat encompassed from there. In other words, I mean, certain things maybe just raise a question as opposed to actually misleading somebody to a wrong conclusion, you know? I mean, is that reflected at all in the case law? Yeah, there are. I can think of some cases where certain language has been challenged in the letter, but that's more the nature of puffery. This is part of the process of communication in order to seek payment. So I don't know how I would search it if I were to do so quickly. It's a good idea, but, I mean, how does it run into the problem of where you do something that everyone knows crosses the line? And if you say, in addition, if you don't do this, we're going to have to resort to other means, or you... I understand. So... It's not here. No, I'm trying to think through Judge Ketledge's point, and I'm saying, yes, like in this particular case, it does seem funny if you're not sure. You shouldn't just haul off and file a lawsuit. I mean, if you're not sure, or haul off and do something you shouldn't do, you pay less than the amount or suddenly feel you're required to pay the full settlement offer. So I really like the idea that even the least sophisticated, the objectively reasonable least sophisticated consumer, has some obligation to do something. I'm just trying to figure out how that works. I think it's on that point, but I want to just point one thing out that the government did say that I think is important, in particular in reviewing this letter. What they did say, based on their studies, and this cannot be disputed by anybody, by the time the person got a debt this old, this is not the first letter that they've gotten. And they've gotten a lot of letters, and they said so, and they got a lot of settlement offers. That's just the way it's done. So I don't think there was even some kind of hesitation, like, oh my gosh, I've got to go check. But I suppose if there is some concern about the content of the letter, yeah, they could at least look into it. That's not terribly onerous. They're supposed to say, well, they must have jumped to the conclusion they would have been sued. That doesn't make sense to me. So I could keep talking, but I see the red lights up. We're struggling with this one. Any more questions? Well, thank you, Mr. Schultz. Appreciate your answering our questions. Mr. Adelman, I think you may have some more time. If you do, you get it. We've got the industry experts here. That's right. I would like to answer a question that Judge Rosenthal posed. Yes, many consumers will offer and be requested to make modest payments on old debts, $25, $50. And often consumers are not aware of the age of the debt or what it is. For example, one of the debts in the McMahon case was a very old gas bill, and when the person wrote in, what is this? He got a very misleading response saying, oh, we just bought this. Yes, we just bought it, but it's 15 years old. They didn't mention that. I do not believe that any FDCPA case imposes upon a consumer the obligation to be familiar with the law. That's not what I was suggesting. I'm just suggesting that you could have a statement in a letter which would not lead the consumer to reach a conclusion that is wrong but might make the consumer aware that there is an issue here, that I should find out which answer is correct. Does that make sense? I think the law is that if the language would mislead a significant fraction of the public, it's a problem. Here, there's nothing in the letter which indicates anything about the debt, other than that you should settle it and you're better off settling it. Well, I mean, it seems the letter does two things. It says you owe a certain amount of money, and then it, quote, offers you a settlement. Those are the two operative sentences here. Is that fair? Yes, there's some other verbiage as well suggesting you're better off settling. And so the first one, you would agree that just saying you owe $4,700, that's not problematic, right? I mean, that's a totally factual statement. We are willing to go with the agency's position that a simple statement, here is the debt and here are the G and the 11 notices. That's not a problem. And then so we have the settlement thing. And, you know, there I wonder, I mean, you can't have it both ways here. We have the least sophisticated consumer, and I wonder whether we are bringing a judicial and almost, or a legal and perhaps judicial perspective to the specific question whether settlement would be so construed by this least sophisticated consumer. If you look at common lay dictionaries, the Seventh Circuit looked at Wikipedia, which said the same thing. I'm not so sure about that, but go ahead about the dictionary. A common usage as used on television and advertising. Let's settle this. Yes. I mean, like two guys who are having a disagreement, let's settle this right now. That's a pretty common usage. One very common usage is resolution of legally enforceable rights short of litigation. Very common for you and me, that's for sure. I think it's very common for laypersons, as indicated by surveys of dictionaries, as indicated by the agencies which do have expertise in assessing the impact of language on consumers. They were given that role in the Colgate-Pomalev case, and I think that some deference to their position is required here. So, yes, I do think it conveys that meaning to a consumer. A large portion of just ordinary dictionary definitions of settle or settlement deal with that issue. Granted, there are others. It could be an invitation to a fist fight, but in the context of a letter from a debt collector referencing what at one point was a legally enforceable obligation, yes, I think it does convey that meaning, Your Honors. If there are no other questions. Do you have any new insights on the stage of the case, motion to dismiss versus summary judgment? Any thoughts since you were up here before on that? I do not think that granting a motion to dismiss was granted on, I think, an untenable ground, that there has to be a threat or actual litigation before this can be actionable. That's a legal point. That's correct. That analysis could appear at either stage and it wouldn't make a difference. I'm asking you to put that to the side based on what we've asked you today. Is there a way in which the phase of the case makes a difference potentially? It should not be thrown out on a motion to dismiss when there's significant indication that this language is a problem. There are a few contexts... If you concede that if we say, well, it's plausible, we're just doing a plausible thing, so we're asking whether it's plausible that a reasonably objective, least sophisticated consumer would find this misleading, that even though we said that at the motion to dismiss stage you could still lose at the summary judgment stage? Would you agree with that? Or at a trial, obviously. But even at summary judgment is what I'm asking. It is possible. I don't think it would be in this context because there's a substantial amount of lay definitions and the like indicating that this is a reasonable meaning. I'm just making the point. You would agree there are two different standards we're applying. It is correct. Theoretically, not as you see the case, but theoretically you could win one and lose the second. It is correct, and it also occurs to me as I'm sitting, that there are contexts in which evidence is taken, although the court still makes the decision, unconscionability under the Uniform Commercial Code, certain types of contract interpretation issues in which evidence is taken as to what usage may have been, what was meant by the language, but in many cases it is still decided by the court. What I think is not appropriate is to throw the case out at the pleading stage on essentially an incorrect legal theory. I do not think it tenable that there has to be a threat as opposed to a misleading statement. And I also think that misleading, since this Court's geritol case, includes the concept of making affirmative disclosures that are necessary to make the language you do use. Is it fair to say all her decision is meaning is that she's not finding the word settle and settlement in this context misleading? I don't think... That's why she's marching on to the threat point. I don't think... I think she said a threat was essential. Well, OK. I don't think that's right. Unless Your Honor has some other questions, my time is up. Now, thanks to all three of you, including the government, for participating as an amicus curiae. We really appreciate that. Tell your bosses thank you. Case will be submitted.